IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER R. STAPLE**<br>3026 Webb Road<br>Ravenna, Ohio 44266-9411<br><br>　　　　　　　　Plaintiff,<br>*v.*<br><br>**CITY OF RAVENNA**<br>c/o Frank J. Cimino, Law Director<br>210 South Park Way<br>Ravenna, Ohio 44266-2907<br><br>**FRANK SEMAN**<br>Mayor, City of Ravenna<br>City of Ravenna<br>210 South Park Way<br>Ravenna, Ohio 44266-2907<br><br>*and*<br><br>**JEFF WALLIS**<br>Chief of Police<br>220 South Park Way<br>Ravenna, Ohio 44266-2906 | Case No. _____<br><br>Hon. _____<br>　　　　United States District Judge<br><br>Hon. _____<br>　　　United States Magistrate Judge<br><br><br>**AMENDED COMPLAINT**<br><br><br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Christopher R. Staple ("Staple"), through his undersigned counsel, for his civil action against defendants hereby alleges:

1. Staple is a resident of Shalersville Township in Portage County, Ohio, and is a former employee of the Police Department of the City of Ravenna.

2. Defendant City of Ravenna ("the City") is a municipal corporation organized and operating under a charter form of government in Portage County, Ohio.

3. Defendant Frank Seman ("the Mayor") is the duly elected Mayor of the City and serves as the appointing authority for employees of the Police Department of the City.

4. Defendant Jeff Wallis ("the Police Chief") is the highest ranking officer of the Police Department of the City and at all times relevant to this civil action held the rank of Chief of Police.

### JURISDICTION

5. This court has jurisdiction over the defendants and the subject matter of this civil action under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.

### COMMON ALLEGATIONS

5. Staple is a third party beneficiary of a grievance process set forth in a certain collective bargaining agreement between the City and the union serving as the collective bargaining representative of the bargaining unit of which Staple was a member.

6. Beginning August 17, 2020, upon having elected to proceed under O.R.C. § 4117.03(A)(5) without the intervention of his collective bargaining representative, Staple challenged various findings by the Police Chief leading ultimately to his recommendation that Staple's services be discontinued for violation of certain department rules, policies, and procedures.

7. Staple represented himself with the assistance of his own private counsel through the first two pre-disciplinary hearings conducted by the Police Chief on behalf of the City in respect of Staple's conduct while in the City's employ.  While the collective bargaining

2

representative was invited to attend each such session, such representative appeared only at the first of the pre-disciplinary hearings and did not attend the second hearing.

8. At no time did Staple ever refuse to allow the collective bargaining representative to attend any step of any pre-disciplinary or disciplinary processes administered by the City.

9. In respect of each pre-disciplinary hearing, a written notice of the hearing was delivered to Staple in hand. Once a determination was reached respecting Staple's continued tenure, a copy of the Mayor's decision to accept the Police Chief's recommendation of discharge was delivered to Staple by certified mail on October 20, 2020.

10. On October 30, 2020, Staple lodged a grievance with the City challenging the Mayor's decision to terminate his employment. In doing so, Staple again invoked his right to proceed in the adjustment of his grievance without the intervention of the collective bargaining representative in accordance with rights extended to public employees under Ohio law by operation of O.R.C. § 4117.03(A)(5).

11. In due course and following satisfaction of interim steps of the grievance process, the Mayor convened a meeting with Staple and his private counsel on November 12, 2020, to hear Staple's grievance at the pre-arbitration Step 3 phase of the grievance adjustment process. The collective bargaining representative, though invited, did not attend this meeting, but Staple and his private counsel did.

12. Upon information and belief, the Mayor signed a letter on or about November 20, 2020, by which he reaffirmed Staple's discharge and disallowed each of the grounds offered in support of his grievance at Step 3.

13. Section 15.4D of Article 15 of the collective bargaining agreement establishing the terms and conditions of Staple's employment provides that the Mayor "shall render his

decision [at Step 3 of Staple's grievance] *in writing and deliver [the same] to [Staple] and the [collective bargaining representative]* … *within ten (10) days after the meeting with [Staple]."* (Emphasis supplied.) Copies of Articles 15 and 16 of the collective bargaining agreement are reproduced in **Exhibit A**, attached hereto and hereby incorporated by reference as if fully rewritten herein.

      14. The Mayor never caused his written decision of November 20, 2020, to be delivered to the Charging Party in hand or by certified mail whereby delivery could be confirmed. Indeed, when approached by an officer of the Police Department of the City about how he would prefer a copy of the Mayor's decision at Step 3 to be delivered to him, Staple specifically asked that such decision be delivered to him by certified mail, a procedure that was consistent with established practices and one of the prior notices received from the City respecting disciplinary action initiated against Staple.

      15. To the best of Staple's knowledge and information, neither the Mayor nor anyone else representing the City ever caused the Mayor's decision of November 20, 2020, to be dispatched to Staple by certified mail, nor was such decision ever delivered to Staple in hand even though both methods had been used by the City to serve Staple with other notices under the grievance process before Step 3.

      16. Staple has not been able to ascertain with certainty whether the collective bargaining representative ever received written notice of the Mayor's November 20, 2020, decision or when such notice may have been delivered to such representative. The service requirements of the collective bargaining agreement could not be completed unless and until *both* Staple *and* the collective bargaining representative received copies of such decision.

4

17. At some point, Staple or his private counsel learned informally that the Mayor had decided to deny Staple's grievance at Step 3. While Staple was still waiting to receive his copy of the Mayor's written decision, Staple's private counsel participated in a telephone conference with the General Counsel for the collective bargaining representative on November 23, 2020, during which the Mayor's decision against Staple at Step 3 was generally discussed. During that telephone conversation, Staple's private counsel made it clear that Staple wished to have his grievance referred to arbitration. The General Counsel of the collective bargaining representative agreed to cooperate with Staple in preparing and serving a notice of arbitration on the City, as the responsibility for satisfying the process of submitting a grievance to arbitration under Article 16 of the collective bargaining agreement rested with the collective bargaining representative *exclusively*, after which the responsibility for representing Staple, by written agreement with such representative, would transfer to Staple's private counsel. Section 16.1 of Article 16 of the collective bargaining agreement is included in the copy of the grievance procedure reproduced in **Exhibit** A**,** attached to this complaint and hereby incorporated by reference as if fully rewritten herein, and confirms that *only* the collective bargaining representative can serve a notice of arbitration.

18. Staple later discovered that the Police Chief attempted to send a copy of the Mayor's decision to him by e-mail transmission, but did not attach a copy of the decision to his e-mail message. Accordingly, as of the date of his private counsel's November 23, 2020, telephone conference with the General Counsel of the collective bargaining representative, Staple still had not received a copy of the Mayor's decision to deny the grievance at Step 3.

19. Under the terms of Section 16.1 of Article 16 of the collective bargaining agreement, the collective bargaining representative could appeal the Mayor's final decision on

5

Staple's grievance by submitting a notice of arbitration to the City "within thirty (30) calendar days after the rendering of the decision at Step 3." During his telephone conference with the General Counsel of the collective bargaining representative on November 23, 2020, Staple's private counsel asked for confirmation of how the deadline for delivery of a notice of arbitration would be computed and the General Counsel confirmed that Saturdays, Sundays, and holidays would be excluded by operation of Section 15.2B of Article 15 of the collective bargaining agreement, but gave assurances that he would double-check the collective bargaining agreement and get back to Staple's private counsel if he determined that an earlier deadline would apply.

20. If Saturdays, Sundays, and holidays were to be excluded in determining the deadline for perfecting the appeal from the Mayor's decision at Step 3 of Staple's grievance to an arbitrator, the next regularly scheduled date on which the City's offices were open after the 30th calendar day immediately succeeding the Mayor's decision of November 20, 2020, was Wednesday, January 6, 2021, at the earliest, but only if the City could prove delivery of such decision on *both* Staple *and* the collective bargaining representative on the very day the Mayor signed it, *viz.*, November 20, 2020. Otherwise, if Saturdays, Sundays, and holidays were to be included in determining the deadline, the earliest possible deadline for providing the City with a notice of arbitration would have been Monday, December 21, 2020, at the earliest, again assuming the City could prove proper delivery of the Mayor's decision on the very day he signed it, *viz.*, November 20, 2020.

21. The General Counsel of the collective bargaining agreement never contacted Staple's private counsel with word that he had determined that Saturdays, Sundays, and holidays were not to be excluded before lodging a notice of arbitration respecting Staple's grievance with the City on Wednesday, December 23, 2020.

6

22. Because the 30-day deadline for submitting a notice of arbitration was based on the date on which the Mayor's decision at Step 3 was served on *both* Staple *and* the collective bargaining representative, which-ever occurred later, such deadline was to be extended by one day for each day's delay in furnishing such notice. Moreover, although Article 16 required the Mayor to service notice of his decision "within ten (10) days after the [Step 3] meeting with [Staple]," the agreement is silent respecting disposition of Staple's grievance if the Mayor failed to satisfy this express notice requirement.

23. On January 8, 2021, the City authored a letter and presented it to the collective bargaining representative and Staple's private counsel in which it notified Staple that it regarded the December 23, 2020, notice of arbitration as untimely and therefore declined to participate in the process of referring Staple's grievance to arbitration. A copy of the City's letter of January 8, 2021, is attached hereto as **Exhibit B** and is hereby incorporated by reference as if fully rewritten herein.

24. A challenge to the authority of an arbitrator to address the merits of a grievance lodged under the dispute-resolution provisions of a collective bargaining agreement raises an issue of "arbitrability."

25. Section 16.4 of Article 16 the collective bargaining agreement referenced above provides that the arbitration of grievances under that agreement "shall be conducted pursuant to the Rules and Regulations of the American Arbitration Association." Rule 3a of the Labor Arbitration Rules of the American Arbitration Association provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 3b of such rules provides that the arbitrator shall have the power to determine the existence or validity of a contract of which an

arbitration clause forms a part," whereby "[s]uch an arbitration clause shall be treated as an agreement independent of the other terms of the contract" and "[a] decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause." Rule 3c of such rules obligates a party to "object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection" and goes on to provide that the arbitrator "may rule on such objections as a preliminary matter or as part of the final award." Thus, the question of "arbitrability," by express agreement of the City and the collective bargaining representative, is an issue left for an *arbitrator* to decide and cannot be relegated to any unilateral and unreviewable determination by the City that the collective bargaining representative in this case failed to preserve the availability of arbitration as the last step in the adjustment of Staple's grievance in a timely manner. Copies of Rules 3a, 3b, and 3c of the Labor Arbitration Rules of the American Arbitration Association are included in **Exhibit C**, attached hereto and hereby incorporated by reference as if fully rewritten herein.

26. Rules identical to those referenced in Paragraph 25, above, in respect of the Labor Arbitration Rules are incorporated into Rule 6 of the Employment Arbitration Rules of the American Arbitration Association.

27. Rule 3 of the Labor Arbitration Rules can be accessed by way of this URL: *https://www.adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf*.

28. Rule 6 of the Employment Arbitration Rules can be accessed by way of this URL: *https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf*.

29. The arbitration process outlined in the collective bargaining agreement referenced above offers Staple access to a procedure offering him the opportunity for due process in

8

the resolution of disputes with the City over continuation of his tenure in public service, but only if the City cooperates by agreeing to refer at least the question of "arbitrability" to an arbitrator. The City instead effectively has taken the position that it may act unilaterally in determining that an arbitration notice was not submitted in respect of Staple's grievance in a timely fashion and then deny both Staple and the collective bargaining representative that submitted that notice an opportunity to refer at least the question of "arbitrability" to an arbitrator for impartial review and adjudication.

30. On February 26, 2021, Staple initiated a civil action under Chapter 2711 of the Ohio Revised Code to compel the City to submit to arbitration over at least the "arbitrability'" issue, *sub nom. Christopher R. Staple v. City of Ravenna, et al.*, Case No. 2021-CV00107, Portage County Court of Common Pleas (Doherty J.).

31. On March 22, 2021, shortly after commencing the civil action referenced in Paragraph 30, above, Staple lodged both an unfair labor practice charge against the City with the State Employment Relations Board ("SERB") for its refusal to submit at least the question of "arbitrability" to an arbitrator in violation of Staple's rights under the collective bargaining agreement, *sub nom. Christopher R. Staple v. City of Ravenna*, SERB Case No. 2021-ULP-03-0044, and another unfair labor practice charge against the collective bargaining representative for breach of its duty of fair representation and its actions in aid of the position the City has taken on the timeliness of the notice of arbitration of Staple's grievance, *sub nom. sub nom. Christopher R. Staple v. The Fraternal Order of Police, Ohio Labor Council, Inc.*, SERB Case No. 2021-ULP-03-0045 (collectively, "the SERB Proceedings").

32. On June 3, 2021, SERB dismissed Staple's unfair labor practice charges referenced in Paragraph 31, above, in spite of Staple's request that action on his charges be stayed pending entry of a final judgment in the Chapter 2711 action referenced in Paragraph 30, above.

33. On June 11, 2021, the trial court sustained the City's motion to dismiss Staple's civil action referenced in Paragraph 30, above, on the grounds that he lacked standing to seek relief under Chapter 2711 to compel arbitration when he was not a party to the collective bargaining agreement and the collective bargaining representative failed to join in Staple's claim in court.

34. Following decisions handed down by SERB on October 28, 2021, denying applications made by Staple seeking reconsideration of the decisions referenced in Paragraph 32, above, an original action in mandamus was commenced by Staple to challenge the results of the SERB Proceedings. That mandamus action is still pending before the Tenth Appellate Judicial District of the Ohio Court of Appeals, *sub nom. State ex rel. Christopher R. Staple v. City of Ravenna, et al.*, Case No. 22-AP-78, and no decision has been announced by the court in such action as of the date of commencement of the above-captioned civil action.

35. On January 31, 2022, the Eleventh Appellate Judicial District of the Ohio Court of Appeals overruled Staple's assignments of error in affirming the dismissal of Staple's Chapter 2711 action. On June 7, 2022, the Supreme Court of Ohio declined to accept discretionary jurisdiction over Staple's appeal.

36. With due consideration of his pending mandamus action, Staple has exhausted every other remedy available to him under the collective bargaining agreement referenced above, by way or administrative review through the SERB Proceedings, and by way of judicial review sought at all three levels of the judicial system of the State of Ohio.

## COUNT ONE

*Deprivation of Rights and Privileges Guaranteed by Federal Law*
42 U.S.C. § 1983

37. Staple is a person protected by 42 U.S.C. § 1983.

38. By operation of the Fourteenth Amendment of the United States Constitution, Staple enjoys a constitutionally guaranteed property interest in continued public sector employment that cannot be deprived without due process of law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-41, 105 S.Ct. 1487, 1491-93, 84 L.Ed.2d 494 (1985).

39. By denying Staple access to an arbitrator to hear his grievance, even in only to address the question of "arbitrability," the defendants have violated Staple's due process rights and privileges respecting protection of the property interest referenced in Paragraph 38, above.

40. The acts of the City, the Mayor, and the Police Chief were and are arbitrary, capricious, and not otherwise in accordance with law.

41. The acts of the defendants and each of them, or some combination of them, furthermore, were and are malicious or wrongful and thereby subjected Staple (or caused Staple to be subjected), under color of state law, to the deprivation of rights and privileges secured by the Constitution or laws of the United States, including (without limitation) those rights and privileges guaranteed to him under the Fourteenth Amendment to the Constitution of the United States.

42. In the absence of relief secured in this court, the unlawful conduct of the defendants, and each of them, will continue to deprive Staple of this due process rights and privileges and will continue to deny Staple process that is due for the protection or defense of his property interest in continued public sector employment.

43. As a proximate result of the wrongful conduct of the defendants and each of them, or some combination of them, Staple has suffered (and continues to suffer) damages.

**WHEREFORE**, having stated his claim for relief, Staple hereby demands that this court enter judgment in his favor and against the City, the Mayor, and the Police Chief, jointly and severally, to enjoin them and each of them from refusing to submit Staple's grievance challenging the decision to discharge him to arbitration in respect of all issues deemed by an arbitrator duly selected by the parties to be "arbitrable" and from declining to be bound by the decision of such arbitrator in adjustment of such grievance. Alternatively, Staple demands that this court hear the merits of his grievance, including (without limitation) the question of the timeliness of the December 23, 2020, notice of arbitration that the City has raised.

**WHEREFORE**, Staple further demands that this court enter judgment awarding monetary damages in his favor and against defendants, and each of them, jointly and severally, in such amount as shall fully and fairly compensate him for all damages proximately caused by the wrongful acts of the City, the Mayor, and the Police Chief, as alleged herein, as well as an award of punitive damages on account of their malicious behavior in their dealings with Staple, ordering such further and appropriate relief as this court may consider necessary to carry out the objects and purposes of such relief at law and in equity, awarding reimbursement of all attorney fees and expenses incurred by or for Staple in respect of his successful prosecution of this civil action in accordance with 42 U.S.C. § 1988 and/or all other applicable statutes, rules, and principles of law, and taxing defendants and each of them, jointly and severally, with all costs of this action.

## JURY DEMAND

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury of all issues raised by the allegations of this verified complaint.

/s/ S. David Worhatch

**S. DAVID WORHATCH**          0031174
4920 Darrow Road
Stow, Ohio  44224-1406

330-650-6000 (Akron)
330-656-2300 (Cleveland)
330-650-2390 (Facsimile)
*sdworhatch@nls.net*

**Counsel for Plaintiff**